United States District Court
Southern District of Texas
**ENTERED**
April 01, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MOSTAFA NATOUR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-CV-00234 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff Mostafa Natour was driving an 18-wheeler toward an intersection in Stafford, Texas. Sonny Jackson, a United States Postal Services ("USPS") employee, approached the same intersection in his mail truck from Natour's right. Jackson stopped at the red light, and then pulled into the intersection to turn right on red. Natour was unable to see Jackson in time and hit Jackson's mail truck. After the collision, a police officer arrived at the scene to investigate the collision. While the officer prepared a report memorializing what the two drivers said, he neither made any findings of fault nor issued citations to either driver. Neither Natour nor Jackson reported injuries at the scene. After the accident, Natour sought extensive medical treatment, which he claims was due to the onset of pain from injuries caused by the accident.

Natour filed this action under the Federal Tort Claims Act ("FTCA") seeking economic and noneconomic damages for past and future medical treatment, past and future physical impairment, past mental anguish, and past and future pain and suffering.

The United States denies all allegations of negligence, denies that it was the proximate cause of injury, and denies all of Natour's claims for damages.

## I.      FINDINGS OF FACT[1]

The Court finds that the following facts have been established by a preponderance of the evidence.

### A.      THE PARTIES

1.      Plaintiff Mostafa Natour is an individual residing in Houston, Texas. (Dkt. No. 1); (Dkt. No. 96 at 33) (SEALED).[2]

2.      Defendant United States of America is sued under the FTCA because Natour alleges claims arising from the actions or omissions of an employee of USPS.  (Dkt. No. 1).

### B.      JURISDICTION AND VENUE

3.      The Court has jurisdiction over this matter and the Parties because Natour asserts claims against the United States for personal injuries caused by the negligent or wrongful act or omission of a Government employee while acting within the scope of his employment, under circumstances where the United States, if a private person, would be liable in accordance with the laws of Texas.  28 U.S.C. § 1346(b)(1).

4.      Venue is proper because the events giving rise to the claims occurred in the Southern District of Texas.  28 U.S.C. § 1402(b).

### C.      THE INCIDENT

5.      On February 1, 2021, Natour was driving an 18-wheeler trailer truck westbound on U.S. 90 in Stafford, Texas. (Dkt. No. 96 at 34–35, 58).

---

[1]      The factual statements made herein (except where the Court is discussing a factual dispute) should be considered as findings of fact regardless of any heading or lack thereof. Similarly, the legal conclusions, except where the Court discusses the various competing legal theories and positions, should be taken as conclusions of law regardless of any label or lack thereof.  Additionally, any finding of fact that should be construed as a conclusion of law is adopted as such.

[2]      The transcript of the bench trial, (Dkt. No. 96), is cited extensively.  For ease of reference, the Court notes that subsequent citations to the transcript will omit the "(SEALED)" designation.

6.      The weather was clear, (*id.* at 34), and the traffic was typical, (*id.* at 35).

7.      Natour approached the intersection of U.S. 90 and Promenade Street. (Agreed (*id.* at 35, 37)).

8.      Jackson, a mail carrier who was driving a USPS mail truck, approached the same intersection, however, he was driving down a cross-street, Promenade Street. (*Id.* at 36).

9.      Natour was in the right-hand lane. (*Id.* at 35).

10.     Natour's traffic light was green as he entered the intersection. (*Id.* at 36, 37).

11.     Natour was driving the speed limit. (*Id.* at 35).

12.     A fuel truck was travelling on Natour's left as he travelled through the intersection. (*Id.* at 36).

13.     As he entered the intersection, Natour only saw a UPS 18-wheeler truck to his right in the middle of the three lanes on Promenade Street. (*Id.* at 37, 59).

14.     That UPS truck was to the immediate left of Jackson's truck, which was on the opposite side in the right-hand lane. (*Id.* at 36, 37).

15.     After he entered the intersection, Natour saw Jackson's mail truck for the first time in the southbound traffic lane to his right. (*Id.* at 59).

16.     The UPS truck blocked Natour from being able to see the smaller mail truck on the other side. (*Id.* at 59).

17.     Jackson pulled into the intersection to turn right on a red light as Natour was driving through the intersection. (*Id.* at 37).

18.     Natour struck Jackson's mail truck. (*Id.* at 36).

19.     Natour was unable to avoid the collision because a large fuel truck was to his immediate left. (*Id.*).

20.     Jackson testified that as he approached the same intersection, he came to a complete stop at the red light. (*Id.* at 170). Jackson further testified that after his light turned green, he proceeded straight through the intersection not intending to turn. (*Id.* at 184).

21.     The Court does not find Jackson's testimony to be credible as it contradicts his prior deposition testimony. The Court also had the opportunity to observe the testimony of both Natour and Jackson at trial. After evaluating the credibility of both

witnesses and the other evidence presented at trial, the Court finds that the preponderance of the evidence shows that Jackson pulled into the intersection to turn right in front of Natour while Jackson's light was red.

22.    The right side of Natour's vehicle collided with the left front side of Jackson's vehicle. (*Id.* at 161–62); (Dkt. No. 86-5) (SEALED); (Dkt. No. 86-6) (SEALED); (Dkt. No. 98-2).

23.    After the collision, Stafford Police Department Officer Castaneda arrived at the scene of the accident. (Dkt. No. 96 at 62). Officer Castaneda spoke to both Natour and Jackson. (*Id.* at 181).

24.    Officer Castaneda prepared a Texas Peace Officer's Crash Report reflecting what Natour and Jackson told him. (Dkt. No. 98-1). The report reflects that Jackson was traveling in the far-right lane and that Natour collided with the front left-side of the USPS vehicle shortly after Jackson entered the intersection. (*Id.*).

25.    Officer Castaneda did not issue a citation to either driver, (Dkt. No. 96 at 62, 182), and the Crash Report did not make any findings of fault. Officer Castaneda did not testify at trial. (*See generally id.*).

26.    Natour did not seek medical attention at the scene of the accident, (*id.* at 41), and no ambulance was summoned or arrived at the scene, (*id.* at 178).

27.    The damage to both vehicles was relatively minor and included dents. (Dkt. No. 86-5) (SEALED); (Dkt. No. 86-6) (SEALED).

28.    After the accident, Natour drove his vehicle from the scene. (Dkt. No. 96 at 62).

29.    Aside from the crash report that was admitted into evidence and the testimony from Natour and Jackson, there was no other evidence on how the accident occurred presented at trial.

### D.    MEDICAL TREATMENT AND EXPENSES

30.    Plaintiff's Exhibit 6 shows the damage to front right fender of Natour's vehicle. (Dkt. No. 86-5) (SEALED).

31.    Natour testified there was no damage to his vehicle before the collision. (Dkt. No. 96 at 41).

32.    Natour testified that the damage depicted in Plaintiff's Exhibit 6 accurately depicts the damage to Natour's vehicle caused by the collision. (*Id.*).

4

33.     Natour testified that he was thrown from the right to left inside his truck. (*Id.* at 41–42).

34.     Natour testified that he began feeling pain in his lower back, neck, and right shoulder.  (*Id.* at 42).

35.     Natour testified that he used Ibuprofen and Advil to ease his pain in the days after the collision.  (*Id.* at 43).

36.     Natour did not seek medical treatment until a week after the accident.  (*Id.* at 63).  Natour testified that his pain level at this time, on a scale of one to ten, was about an eight or nine.  (*Id.* at 43–44, 50).

37.     Natour claims that he wanted to see his primary care doctor but could not get an appointment for several weeks.  (*Id.* at 43).  So, he sought treatment from Tuyen Bui, a chiropractor at Southwest Family Chiropractic Center, on February 8, 2021, complaining of right shoulder and back pain.  (*Id.* at 44, 75).

38.     Bui does not have a medical degree, (*id.* at 94), and is not a radiologist, (*id.* at 97).

39.     Bui referred Natour to get an MRI.  (*Id.* at 82).  The MRI took place at One Step Diagnostic.  (Dkt. No. 86-1) (SEALED).

40.     The total charge for the MRIs provided by One Step Diagnostic was $7,600. (*Id.* at 15–16) (SEALED).

41.     Although Bui is not a medical doctor, he reviewed the cervical and lumbar MRI findings made by a radiologist and diagnosed Natour with cervicalgia, radiculopathy, cervical disc displacement, and disc disorder.  (Dkt. No. 96 at 96–97).

42.     The radiologist did not testify at trial and did not make these diagnoses. (*See generally id.*).

43.     Bui testified that the MRI findings did not change the course of his treatment.  (*Id.* at 83).

44.     Bui treated Natour with physical therapy that entailed performing passive modalities.  (*Id.* at 83).  On June 8, 2021, Bui stopped treatment.  (*Id.* at 90).

45.     The total charge for all services rendered by Southwest Family Chiropractic was $4,244.  (Dkt. No. 86-3 at 9) (SEALED).

46.     Bui referred Natour to Dr. Asif Chaudhry, an interventional pain management doctor, at Houston Pain and Spine for further treatment.  (Dkt. No. 96 at

86).  Natour began treatment with Dr. Chaudhry on April 6, 2021, complaining of low back pain that radiated to lower extremities and neck pain that radiated to both shoulders.  (*Id.* at 110–11, 119).

47.    Dr. Chaudhry diagnosed Natour with disc protrusion.  (*Id.* at 117–118).

48.    On April 14, 2021, Natour underwent four separate injections to the back.  (*Id.* at 120–21).  About two weeks later, Natour reported to Dr. Chaudhry that he had 90 percent improvement after the injections but still had neck pain.  (*Id.* at 122).  Dr. Chaudhry recommended a cervical epidural steroid injection.  (*Id.* at 123).  On June 30, 2021, Dr. Chaudhry performed an injection to Natour's cervical spine.  (*Id.* at 124).

49.    Dr. Chaudhry stopped treating Mr. Natour on September 1, 2021.  (*Id.* at 64, 139).  At that last visit, Natour told Dr. Chaudhry that his pain was a 1 out of 10 for both the neck and back pain.  (*Id.* at 124).

50.    The total charge for all services rendered by Houston Pain and Spine was $10,850.  (Dkt. No. 86 at 2–3) (SEALED).

51.    The total charge for the facility costs for performing the injections at One Step Diagnostic Surgery Center on April 14, 2021, was $29,344.  (Dkt. No. 86-2 at 2) (SEALED).  Dr. Chaudhry also charged $6,750 for the injections he provided at the Center.  (*Id.* at 105) (SEALED).

52.    The total charge for the facility costs for performing the injections at One Step Diagnostic Surgery Center on June 3, 2021, was $9,000.  (*Id.* at 9) (SEALED).

53.    The total charge for all anesthesia services provided during the injections by TL Billing and Practice Management LLC was $7,500.  (Dkt. No. 86-4 at 2–4) (SEALED).

E.    CAUSATION

54.    Bui did not make an opinion on causation in his own records.  (Dkt. No. 96 at 96).

55.    Bui did not do an independent analysis on whether the accident caused the injuries.  (*Id.*).

56.    Bui testified that his opinion on causation relied on Natour's complaint that his injuries were caused by the accident at issue.  (*Id.*).  He had no information about Natour's physical condition before the accident.  (*Id.* at 98).

57.    Natour did not designate Bui under Federal Rules as a treating provider or retained expert to testify on causation.  Therefore, his evidence regarding causation will not be considered on this point.

58.     Dr. Chaudhry diagnosed Natour with disc protrusion but testified that he could not determine the cause.  (*Id.* at 117–18).

59.     Dr. Chaudhry testified that Natour's disc protrusions were asymptomatic prior to the collision and after the collision, an inflammatory process caused them to be symptomatic. (*Id.* at 118–19). Dr. Chaudhry testified that he believed the collision caused Natour's asymptomatic condition to become symptomatic.  (*Id.* at 119).  He stated that the belief was "[b]ased on the information provided to [him]." (*Id.*).

60.     Dr. Chaudhry testified that his opinion that Natour did not have any neck or back pain prior to the accident relied only on what Natour told him.  (*Id.* at 135).

61.     Dr. Chaudhry did not do an independent analysis on whether Natour's back and neck pain existed prior to the accident.  (*Id.*).

62.     Dr. Chaudhry also testified that he did not know whether the disc protrusion existed before the accident. (*Id.* at 118).  Dr. Chaudhry testified that he needed to have an MRI prior to the accident to confirm whether the disc protrusion was present before.  (*Id.*).

63.     The Court finds that Dr. Chaudhry's testimony did not establish that the accident was the proximate cause of Natour's injuries.  Dr. Chaudhry did not adequately account for or rule out other potential causes, including preexisting conditions or subsequent events, that could explain Natour's injuries.  His opinion is therefore afforded minimal weight.

64.      The Court finds that the relatively minor accident did not cause Natour's injuries, and thus, most of the medical care and services he received to treat those injuries are also not the causal result of the accident.

65.     That said, the Court finds that the accident caused Natour to undergo cervical and lumbar MRIs from One Step Diagnostic.  (Dkt. No. 86-1 at 14–16) (SEALED).

**F.     REASONABLENESS**

66.     Natour did not present any evidence that the charges from One Step Diagnostic for his MRIs were reasonable. (*Id.* at 217).  Dr. Chaudhry refused to provide any opinion on whether this treatment was reasonable. (*Id.* at 134).  While Bui testified that referring Natour to obtain an MRI was necessary for his treatment, (*id.* at 82–83), Bui did not discuss the reasonableness of the MRIs at all.

67.     The Court finds that the One Step Diagnostic charges were not reasonable. Given the Court's finding on causation, the Court does not make any findings about the reasonableness of the other charges.

### G.   NECESSITY

68.   Bui testified that referring Natour to obtain an MRI was a necessary part of treating him because he had cervical complaints traveling to his arm and he had low back complaints traveling to his legs.  (*Id.* at 82–83).  Dr. Chaudhry refused to provide any opinion on whether this treatment was necessary.  (*Id.* at 134).

69.   The Court finds that the One Step Diagnostic charges were necessary. Given the Court's finding on causation, the Court does not make any findings about the necessity of the other charges.

### H.   AWARD FOR MEDICAL EXPENSES

70.   The Court finds that of Natour's many medical expenses, he has not proven that the any of the charges were reasonable, necessary, *and* a direct result of the accident.

71.   The Court finds that Natour is not entitled to recover any past medical expenses.

### I.   OTHER DAMAGES

72.   Natour has dropped all claims for property damages.  (*Id.* at 210).  Natour has also dropped all claims for future mental anguish damages.  (*Id.* at 209).

73.   Natour has requested $50,000 in non-economic damages.  (*Id.* at 210).  These consist of claims for future medical expenses, past and future physical impairment, past mental anguish, and past and future pain and suffering.

74.   Natour testified that his pain has persisted, (*id.* at 52), but he has not seen a medical doctor regarding any injuries sustained in this accident after September 2021, (*id.* at 64).  Natour also has not sought treatment for any feelings of sadness he alleges.  (*Id.* at 68).

75.   The Court finds that Natour's remaining damages—including for future medical expenses, past and future physical impairment, past mental anguish, and past and future pain and suffering—were not the causal result of the collision.

## II.   CONCLUSIONS OF LAW

### A.   JURISDICTION AND VENUE

76.   The Court has jurisdiction over this matter and the Parties because Natour asserts claims against the United States for personal injuries caused by the negligent or wrongful act or omission of a Government employee while acting within the scope of his employment, under circumstances where the United States, if a private person, would be liable in accordance with the laws of Texas.  28 U.S.C. § 1346(b)(1).

8

77.     Venue is proper because the events giving rise to the claims occurred in the Southern District of Texas.  28 U.S.C. § 1402(b).

## B.     THE FEDERAL TORT CLAIMS ACT

78.     Natour brought a negligence claim against the United States.  (Dkt. No. 1 at 3).  While "[t]he United States, as sovereign, is immune from suit save as it consents to be sued," *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941), the FTCA authorizes civil actions against the United States for personal injuries caused by the negligent acts of its employees acting within the scope of their employment, 28 U.S.C. § 1346(b)(1); 28 U.S.C. § 2671 et seq.  The United States is liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."  28 U.S.C. § 2674.

79.     Though a plaintiff may sue the United under the FTCA, he or she is bound by the amount of damages asserted in the SF-95 form filed with the particular agency.  28 U.S.C. § 2675(b); *Dickerson ex rel. Dickerson v. United States*, 280 F.3d 470, 474–75 (5th Cir. 2002) ("Under [Section 2675(b)], claimants under the FTCA cannot claim more than asked for in their administrative claims unless it is justified by newly discovered evidence.").

## C.     LIABILITY FOR NEGLIGENCE

80.     Because the acts occurred in Texas, the FTCA relies on Texas law.  *See* 28 U.S.C. § 1346(b) (making the United States liable under the FTCA "in accordance with the law of the place where the act or omission occurred").

81.     "To maintain a negligence claim under Texas law, a plaintiff must show 'the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach.'" *Kristensen v. United States*, 993 F.3d 363, 368 (5th Cir. 2021) (quoting *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)); *see also Allen v. Walmart Stores, LLC*, 907 F.3d 170, 178 (5th Cir. 2018) (citing Texas caselaw).  And to hold a defendant vicariously liable under respondeat superior, a plaintiff must prove the tortfeasor was an employee of the defendant.  *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018); *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998).

82.     The third element (i.e., proximate cause) may be broken down into two components: (1) cause in fact and (2) foreseeability.  *IHS Cedars Treatment Ctr.*, 143 S.W.3d at 798.  Both components "cannot be satisfied by mere conjecture, guess, or speculation." *Id.* at 798–99.  The first component of proximate cause—cause in fact—"is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred."  *Id.* at 799.  The second component— foreseeability—"requires that the injury complained of be of such a general character as

might reasonably have been anticipated from the defendant's conduct." *Kristensen*, 993 F.3d at 368 (quoting *Skipper v. United States*, 1 F.3d 349, 352 (5th Cir. 1993)).

83.     Also, in Texas, "an individual's contributory or comparative negligence bars recovery if it is 50 percent responsible for his injury, but if it is less than 50 percent responsible it merely diminishes his recovery." *Perez v. United States*, 830 F.2d 54, 57 (5th Cir. 1987) (citing Tex. Civ. Prac. & Rem. Code § 33.001).

84.     In determining comparative fault in a negligence action, there must be a preliminary finding that the plaintiff was in fact contributorily negligent. *See Kroger Co. v. Keng*, 23 S.W.3d 347, 351 (Tex. 2000). "Contributory negligence contemplates an injured person's failure to use ordinary care in regard to his or her own safety," and requires proof that the plaintiff was negligent and that the negligence was the proximate cause of the plaintiff's injuries. *Id.* at 351; *see also Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 520 (Tex. 1978); *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 223 (Tex. 1988).

85.     Even though "there is no duty to anticipate the negligent conduct of another," a plaintiff's duty to use ordinary care to prevent injury to himself includes "a duty to keep a proper lookout." *Lopez v. City Towing Assocs., Inc.*, 754 S.W.2d 254, 263 (Tex. App.—San Antonio 1988, writ denied). "A proper lookout means that [Natour] must have looked in such an intelligent manner as to enable [him] to see what a person in exercise of ordinary care and caution for the safety of [him]self and others would have seen under like circumstances," and it means that Natour "must have taken such steps to guard against accidents which the conditions observed by [him] would necessarily indicate to be necessary." *Id.*

86.     The Court finds that the United States is vicariously liable for the accident at issue because Jackson was a government employee acting within the scope of his employment, and his failure to yield the right of way was a breach of his duty of care that proximately caused the accident with Natour.

87.     The Court further finds that Natour was neither contributorily negligent nor proportionately responsible for the accident because he had the right of way, *see supra* Section I(C), and did not see Jackson until just before the impact, (Dkt. No. 96 at 59).

### D.     DAMAGES

88.     "Under the FTCA, plaintiffs may seek damages 'for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of an employee of the Government while acting within the scope of his office or employment.'" *Barry v. United States*, 667 F.Supp.3d 495, 504 (S.D. Tex. 2023) (quoting 28 U.S.C. § 1346(b)).

89.     Any recovery under the FTCA is limited to compensatory damages. *Duncan v. Goedeke & Cleasey*, 837 F.Supp. 846, 848 (S.D. Tex. 1993) (citing 28 U.S.C. § 2674). The FTCA specifically precludes punitive damages.  28 U.S.C. § 2674.

90.     Because the accident occurred in Texas, Texas law on compensatory damages applies.  *See* 28 U.S.C. § 1346(b)(1).  Under Texas law, "compensatory damages" include economic and noneconomic damages.  Tex. Civ. Prac. & Rem. Code § 41.001(8). "Economic damages," in turn, means "compensatory damages intended to compensate a claimant for actual economic or pecuniary loss" but not "exemplary damages or noneconomic damages."  *Id.* § 41.001(4).  And "noneconomic damages" are defined as "damages awarded for the purpose of compensating a claimant for physical pain and suffering, mental or emotional pain or anguish, loss of consortium, disfigurement, physical impairment, loss of companionship and society, inconvenience, loss of enjoyment of life, injury to reputation, and all other nonpecuniary losses of any kind other than exemplary damages."  *Id.* § 41.001(12).

91.     Natour has dropped all claims for property damages, (Dkt. No. 96 at 210), and all claims for future mental anguish damages, (*id.* at 209).

92.     Natour seeks economic and noneconomic damages for (1) past medical expenses; (2) future medical expenses; (3) past and future physical impairment; (4) past mental anguish; and (5) past and future pain and suffering.  (*Id.* at 208–10).

### 1.     **Past Medical Expenses**

93.     "In vehicular accident cases, a plaintiff must prove to a reasonable degree of medical certainty that her injuries were caused by the accident." *Garcia v. United States*, No. 4:23-CV-00038, 2024 WL 5356122, at *5 (S.D. Tex. Dec. 2, 2024) (citing *Black v. Food Lion, Inc.*, 171 F.3d 308, 310 (5th Cir. 1999) (applying Texas law)).

94.     Generally, "[e]stablishing causation in a personal injury case requires a plaintiff to 'prove that the conduct of the defendant caused an event and that this event caused the plaintiff to suffer compensable injuries.'"  *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 162 (Tex. 2015) (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)).  In particular, "when an accident victim seeks to recover medical expenses, she must show both 'what all the conditions were' that generated the expenses and 'that all the conditions were caused by the accident.'"  *Id.* (quoting *Guevara v. Ferrer*, 247 S.W.3d 662, 669 (Tex. 2007)).  "[E]xpert testimony is [also] necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors." *Id.* (quoting *Guevara*, 247 S.W.3d at 665).  And "if evidence presents 'other plausible causes of the injury or condition that could be negated, the [proponent of the testimony] must offer evidence excluding those causes with reasonable certainty.'"  *Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 218 (Tex. 2010) (emphases omitted) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997)).

11

95.     Without expert testimony on the medical events, however, "non-expert evidence alone [may be] sufficient to support a finding of causation in limited circumstances where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence." *Guevara*, 247 S.W.3d at 668–69. Lay testimony may specifically suffice when it "establish[es] a sequence of events [that] provides a strong, logically traceable connection between the event and the condition" and when it shows that the plaintiff's "basic physical conditions . . . (1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time to the accident, and (4) are within the common knowledge and experience of laypersons, caused by automobile accidents." *Id.* at 667.

96.     A plaintiff must also prove that past medical expenses are both reasonable and necessary to treat the injury. *See Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 886 (5th Cir. 2004) (collecting Texas cases); *see also Monsanto Co. v. Johnson*, 675 S.W.2d 305, 312 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) ("Although medical expense statements can be offered and admitted as evidence of actual expenses, such statements do not, in themselves, constitute evidence of the reasonableness or necessity of the expense," so "[i]t is generally the plaintiff's burden to offer specific evidence of the reasonableness and necessity of expenses, in addition to proof of the actual amount expended.").

97.     In determining whether past medical expenses are reasonable and necessary, "mere testimony from the plaintiff alone is not enough." *Fierros v. Tex. Dep't of Health*, 213 F.App'x 321 (5th Cir. 2007) (per curiam) (citing *Hamburger*, 361 F.3d at 884).

98.     Texas law also requires proof that the medical expenses "were paid or incurred by or on behalf of the plaintiff." *Raine v. United States*, No. 1:19-CV-00231, 2022 WL 970243, at *5 (W.D. Tex. Mar. 31, 2022) (citing Tex. Civ. Prac. & Rem. Code § 41.0105). Medical expenses are "paid" or "incurred" if they "have been or must be paid by or for the claimant." *Haygood v. De Escabedo*, 356 S.W.3d 390, 398 (Tex. 2011).

99.     In sum, "[t]o recover for past medical expenses, a plaintiff must prove that the expenses were necessary to treat the injury, were reasonable in amount, and the expenses were paid or incurred by or on behalf of the plaintiff. *Raine*, 2022 WL 970243, at *5 (citing Tex. Civ. Prac. & Rem. Code. § 41.0105). "Mere proof of the amounts charged or paid is not proof of reasonableness, and the recovery of medical expenses will be denied in the absence of showing the charges were reasonable and necessary." *Jefferson County v. Akins*, 487 S.W.3d 216, 232 (Tex. App.—Beaumont 2016, pet. denied) (citing *Jackson v. Gutierrez*, 77 S.W.3d 898, 903 (Tex. App.—Houston [14th Dist.] 2002, no pet.))

100.     As discussed previously, *see supra* Section I(E)–(H), the Court finds that, of Natour's medical expenses, he has not established that the charges he incurred were

reasonable, necessary, and caused by the accident. Accordingly, the Court awards no damages for past medical expenses.

### 2.    Future Medical Expenses

101.    For future medical expenses, a plaintiff has the burden of showing "that in all reasonable probability, future medical care will be required and the reasonable cost of that care." *Gunn v. McCoy*, 554 S.W.3d 645, 671 (Tex. 2018). No precise evidence is required to meet this burden, but the preferred method is through expert medical testimony. *Whole Foods Mkt. Sw., LP v. Tijerina*, 979 S.W.2d 768, 781 (Tex. App.—Houston [14th Dist.] 1998, pet denied).

102.    Natour testified that after receiving treatment, the pain level for his neck, on a scale of one to ten, was presently "zero to one." (Dkt. No. 96 at 51).

103.    Natour testified that his back has not fully recovered. (*Id.* at 51–52). He testified that the pain level for his back, on a scale of one to ten, would reach "between five and six" periodically.[3] (*Id.* at 52). Natour uses a chair massager that he has at his house and takes over-the-counter pain medication to relieve the pain. (*Id.*).

104.    Nevertheless, he has not seen a medical doctor regarding any injuries sustained in this accident after September 2021. (*Id.* at 64).

105.    The Court finds that Natour has not satisfied his burden of showing that future medical care will be required because of the accident. He also did not satisfy his burden of establishing the reasonable cost of any future care. The absence of medical consultation after September 2021 combined with his use of over-the-counter remedies and chair massagers suggest that Natour's condition is manageable without the need for future medical care. Accordingly, the Court awards no damages for future medical expenses.

### 3.    Past and Future Physical Impairment

106.    "Physical impairment, sometimes called loss of enjoyment of life, encompasses the loss of the injured party's former lifestyle." *PNS Stores, Inc. v. Munguia*, 484 S.W.3d 503, 514 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (first citing *Enright v. Goodman Distrib., Inc.*, 330 S.W.3d 392, 402 (Tex. App.—Houston [14th Dist.] 2010, no pet.); and then citing *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 772 (Tex. 2003)). "To receive physical impairment damages, the plaintiff must prove that (1) he incurred injuries that are distinct from, or extend beyond, injuries compensable through other

---

[3]    Natour's testimony on this point is unclear. When asked how often he was in pain, Natour stated, "Weekly. Almost every day." (Dkt. No. 96 at 52).

damage elements, and (2) these distinct injuries have had a 'substantial' effect." *Id.* (quoting *Enright*, 330 S.W.3d at 402).

107.    Natour testified that the injuries from the accident make it difficult for him to exercise, boat, and play with his grandchildren and dog like he did before the accident. (Dkt. No. 96 at 53–54).  Natour testified that he now must wear a brace to support his back.  (*Id.*).

108.    The Court finds that Natour did not suffer physical impairment because of the accident.  While Natour testified to limitations in his abilities following the accident, the evidence does not demonstrate that these limitations are substantial or beyond what is compensable under other types of damages, like pain and suffering.  Accordingly, the Court awards no damages for past physical impairment.

### 4.    Past Mental Anguish

109.    "Mental anguish is a 'relatively high degree of mental pain and distress' that is 'more than mere disappointment, anger, resentment or embarrassment, although it may include all of these.'" *PNS Stores, Inc.*, 484 S.W.3d at 517 (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)).  "There must be both evidence of the existence of compensable mental anguish and evidence to justify the amount awarded." *Id.* (citing *Hancock v. Variyam*, 400 S.W.3d 59, 68 (Tex. 2013)).  Indeed, a plaintiff must present evidence detailing "the nature, duration, and severity of [the plaintiff's] mental anguish, thus establishing a substantial disruption in the plaintiff['s] daily routine." *Parkway Co.*, 901 S.W.2d at 444.

110.    Natour testified that the accident was "stressful mentally," (Dkt. No. 96 at 54), which in turn has impacted his relationships with his wife, children, and grandchildren, (*id.* at 55).  Natour testified that he did not go to a mental health therapist or medical professional regarding his feelings of sadness as a result of the accident.  (*Id.* at 68).  He testified that "I have to ride the wave, I guess."  (*Id.*).

111.    The Court finds that Natour did not suffer mental anguish because of the accident.  While he testified to experiencing stress and its impact on his relationships, Natour's failure to seek any mental health treatment and his lack of detail regarding the severity, duration, or substantial disruption of his daily routine indicate Natour has not suffered a high degree of mental pain.  Accordingly, the Court awards no damages for past mental anguish.

### 5.    Past and Future Pain and Suffering

112.    "In Texas, pain is only compensable if it is consciously suffered and experienced." *Beltran v. United States*, No. 5:15-CV-00503, 2016 WL 8857009, at *14 (W.D. Tex. Dec. 9, 2016) (citing *S. Pac. Transp. Co. v. Luna*, 730 S.W.2d 36, 38 (Tex. App.—Corpus

Christi 1987, no writ)).  But "[t]he presence or absence of pain is a subjective inquiry."  *Id.* (citing *Dollison v. Hayes*, 79 S.W.3d 246, 249 (Tex. App.—Texarkana 2002, no pet.)).

113.    Indeed, pain and suffering qualifies as a non-economic damage.  *Golden Eagle Archery,* 116 S.W.3d at 763 ("Non-economic damages include compensation for pain, suffering, mental anguish, and disfigurement.").  Because non-economic damages "are not amenable to calculation with 'precise mathematical precision,'" a factfinder "has latitude in determining the award" so long as the amount is what "'a reasonable person could possibly estimate as fair compensation.'"  *Anderson v. Durant*, 550 S.W.3d 605, 618 (Tex. 2018) (first quoting *Brady v. Klentzman*, 515 S.W.3d 878, 887 (Tex. 2017); and then quoting *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 153 (Tex. 2014)); *see also Golden Eagle Archery,* 116 S.W.3d at 772 ("[W]hether to award damages and how much is uniquely within the factfinder's discretion.").  Thus, "[t]he element of pain and suffering is not subject to precise mathematical calculations or objective analysis and is particularly within the province of the [factfinder] to resolve and to determine appropriate amounts."  *Tagle v. Galvan*, 155 S.W.3d 510, 518 (Tex. App.—San Antonio 2004, no pet.) (first citing *Dawson v. Briggs*, 107 S.W.3d 739, 750–51 (Tex. App.—Fort Worth 2003, no pet.); and then citing *Sw. Tex. Coors, Inc. v. Morales*, 948 S.W.2d 948, 951–52 (Tex. App.—San Antonio 1997, no pet.)).

114.    Natour testified that immediately after the accident his pain level, on a scale of one to ten, was about an eight or nine.  (Dkt. No. 96 at 43–44, 50).

115.    Natour testified that the pain "dropped dramatically" after Dr. Chaudhry treated his neck with injections.  (*Id.* at 51).  Natour testified that after receiving treatment, the pain level for his neck was presently "zero to one."  (*Id.* at 51).

116.    Similarly, Natour testified that he felt "[m]uch better" after initially receiving the back injection.  (*Id.* at 48–49).  However, some pain returned after six months.  (*Id.* at 49).  Natour testified that the pain level for his back, on a scale of one to ten, would reach "between five and six" periodically.  (*Id.* at 52).

117.    The Court finds that Natour did not suffer pain and suffering because of the collision.  While he testified to experiencing high pain levels immediately after the accident, Natour's pain was brief and decreased significantly post-treatment.  And no evidence was offered to show Natour's pain levels prior to his accident.  Along the same lines, the evidence fails to establish a causal link between the alleged pain and suffering and the accident, particularly given Dr. Chaudhry's inability to rule out other potential causes of Natour's injuries.  Accordingly, the Court awards no damages for pain and suffering.

### E.   ATTORNEYS' FEES & COSTS

118.   Under the FTCA, attorneys' fees are statutorily limited, and attorneys cannot "charge, demand, receive, or collect for services rendered" more than 25 percent of a judgment or a settlement of suit in litigation.  28 U.S.C. § 2678.  A plaintiff is also not entitled to an award of costs except as provided by 28 U.S.C. § 2412.

119.   Because the Court did not award any damages, *see supra* Section II(D)(1)–(5), the Court does not award attorneys' fees.

120.   The Court further finds Natour is not entitled to an award of costs except as provided by 28 U.S.C. § 2412.

### F.   PRE- AND POST-JUDGMENT INTEREST

121.   "Interest is recoverable against the United States only when specifically provided for by statute because only by statute can the United States waive its sovereign immunity."  *Dickerson ex rel. Dickerson*, 280 F.3d at 478 (quoting *Transco Leasing Corp. v. United States*, 992 F.2d 552, 554 (5th Cir. 1993)).  Thus, "[i]n a suit under the FTCA, recovery can only be had to the extent that Congress has waived its sovereign immunity."  *Id.* (citing *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986)).

122.   The FTCA precludes pre-judgment interest awards.  28 U.S.C. § 2674 ("The United States . . . shall not be liable for interest prior to judgment . . . .").

123.   But the FTCA only limits post-judgment interest awards to the circumstances listed in 31 U.S.C. § 1304 and 28 U.S.C. § 1961.  Under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  Under 31 U.S.C. § 1304(b)(1)(A), "[i]nterest may be paid . . . on a judgment of a district court, only when the judgment becomes final after review on appeal . . . and then only from the date of filing of the transcript of the judgment with the Secretary of the Treasury through the day before the date of the mandate of affirmance."

124.   Therefore, a district court may not order post-judgment interest to accrue from the date of judgment; it may only "order[] post-judgment interest to begin accruing 'from the date of filing of the transcript of the judgment with the Secretary of the Treasury through the day before the date of the mandate of affirmance.'"  *Lee v. United States*, 765 F.3d 521, 530 (5th Cir. 2014) (quoting 31 U.S.C. § 1304(b)(1)(A)).

125.   Because the FTCA precludes pre-judgment interest awards, 28 U.S.C. § 2674, Natour is not entitled to any pre-judgment interest.

126.   Because the Court did not award any damages, *see supra* Section II(D)(1)–(5), the Court does not award post-judgment interest.  31 U.S.C. § 1304(b)(1)(A).

A Final Judgment will be entered separately.

It is SO ORDERED.

Signed on March 31, 2026.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**

17